# UNITED STATES DISTRICT COURT
for the
**EASTERN DISTRICT OF WISCONSIN**

In the Matter of the Seizure of
(Address or brief description of property or premises to be seized)

ALL CRYPTO-CURRENCY, INCLUDING
APPROXIMATELY 55618.76475003 TETHERUS (USDT),
AND ANY OTHER CRYPTO-CURRENCY ON DEPOSIT
IN BINANCE ACCOUNT USER ID #66549745, HELD IN THE
NAME OF NIKHIL SURESH MATHRE (DOB: XX/XX/2000)
WITH AN ASSOCIATED EMAIL ADDRESS OF
TIGERLIONTRADER@PROTONMAIL.COM

Case Number: 22-904M(NJ)

## WARRANT TO SEIZE PROPERTY SUBJECT TO FORFEITURE

TO**:** **SCOTT SIMONS, a Task Force Officer assigned to the Drug Enforcement Administration, and any Authorized Officer of the United States**.

An application by a federal law enforcement officer or an attorney for the government requests that certain property be seized as being subject to forfeiture to the United States of America. The property is described as follows:

All crypto-currency, including approximately 55618.76475003 TetherUS (USDT), and any other crypto-currency on deposit in Binance Account User ID #66549745, held in the name of Nikhil Suresh Mathre (DOB: XX/XX/2000) with an associated email address of tigerliontrader@protonmail.com

I find that the affidavit and any recorded testimony establish probable cause to seize the property.

**YOU ARE HEREBY COMMANDED** to search on or before _____6/3_____, 2022_
*(not to exceed 14 days)*

☒ in the daytime – 6:00 a.m. to 10:00 p.m. ☐ at any time in the day or night, as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must also give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

An officer present during the execution of the warrant must prepare, as required by law, an inventory of any property seized and the officer executing the warrant must promptly return this warrant and a copy of the inventory to United States Magistrate Judge Nancy Joseph.

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. §2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person, who, or whose property, will be searched or seized *(check the appropriate box)* ☐ for _____ days. *(not to exceed 30)*
☐ until, the facts justifying, the later specific date of _____

Date and time issued ___5/20___, 2022; __12:03__ p.m. _____
*Judge's signature*

City and state: <u>Milwaukee, Wisconsin</u>

THE HONORABLE NANCY JOSEPH
<u>United States Magistrate Judge</u>
*Name & Title of Judicial Officer*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of: | | |
| Inventory of the property taken: | | |

| **Certification** |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WISCONSIN

In the Matter of the Seizure of
(Address or brief description of property or premises to be seized)

ALL CRYPTO-CURRENCY, INCLUDING
APPROXIMATELY 55618.76475003 TETHERUS (USDT),
AND ANY OTHER CRYPTO-CURRENCY ON DEPOSIT
IN BINANCE ACCOUNT USER ID #66549745, HELD IN THE
NAME OF NIKHIL SURESH MATHRE (DOB: XX/XX/2000)
WITH AN ASSOCIATED EMAIL ADDRESS OF
TIGERLIONTRADER@PROTONMAIL.COM

Case Number: 22-904M(NJ)

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, Scott Simons, being duly sworn depose and say:

I am a Task Force Officer assigned to the Drug Enforcement Administration, and have reason to believe that in the Northern District of California there is now certain property, namely, all crypto-currency, including approximately 55618.76475003 TetherUS (USDT), and any other crypto-currency on deposit in Binance Account User ID #66549745, held in the name of Nikhil Suresh Mathre (DOB: XX/XX/2000) with an associated email address of tigerliontrader@protonmail.com, that is civilly forfeitable under 21 U.S.C. § 881(a)(6) and 18 U.S.C. §§ 981 (a)(1)(A) and 981(a)(1)(C), and criminally forfeitable under 21 U.S.C. § 853 and 18 U.S.C. § 982(a)(1), as proceeds (1) of a conspiracy to distribute controlled substances committed in violation of 21 U.S.C. §§ 841(a)(1), 841(h), 843(c)(2)(A), and 846; and (2) involved in money laundering transactions in violation of 18 U.S.C. § 1956(a)(1), and which property is therefore also subject to seizure for purposes of civil forfeiture under 18 U.S.C. § 981(b) and 21 U.S.C. § 881(b), and for purposes of criminal forfeiture under 21 U.S.C. § 853(f).

The application is based on these facts:

    ✓ Continued on the attached sheet.

    ❑ Delayed notice of _____ days (give exact ending date if more than 30 days:_____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

SCOTT SIMONS (Affiliate)

Digitally signed by SCOTT SIMONS (Affiliate)
Date: 2022.05.19 11:10:01 -05'00'

_____
Signature of Affiant
Scott Simons, DEA

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone and email.

5/20/22 @ 12:03 p.m.
_____
Date and time issued

at Milwaukee, Wisconsin
City and State

Nancy Joseph, U.S. Magistrate Judge
Name & Title of Judicial Officer

_____
Signature of Judicial Officer

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEIZURE WARRANT**

I, Scott Simons, being first duly sworn, hereby depose and state as follows:

**<u>FUNDS TO BE SEIZED</u>**

1.      I submit this affidavit in support of an application for a warrant to seize approximately **55618.76475003 TetherUS (USDT), and any other crypto-currency on deposit in Binance Account User ID #66549745, held in the name of NIKHIL SURESH MATHRE (DOB: XX/XX/2000) with an associated email address of tigerliontrader@protonmail.com ("Subject Account").**

2.      For the reasons set forth below, I submit that probable cause exists to believe that approximately **55618.76475003 TetherUS (USDT) and any other crypto-currency on deposit in Binance Account User ID #66549745** are:

- Proceeds of a conspiracy to distribute, manufacture, dispense, or possess with the intent to manufacture, distribute, or dispense a controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846; distribution of a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1); conspiracy to deliver, distribute, or dispense a controlled substance by means of the Internet, in violation of Title 21, United States Code, Sections 841(h), 843(c)(2)(A), and 846; and distribution of a controlled substance by means of the Internet, in violation of Title 21, United States Code, Section 843(c)(2)(A);

- Proceeds involved in money laundering transactions in violation of Title 18, United States Code, Section 1956(a)(1);

- Subject to civil forfeiture under Title 21, United States Code, Section 881(a)(6) and Title 18, United States Code, Sections 981(a)(1)(A) and 981(a)(1)(C), and subject to criminal forfeiture under Title 21, United States Code, Section 853 and Title 18, United States Code, Section 982(a)(1); and

- Subject to seizure via a civil seizure warrant under Title 18, United States Code, Section 981(b) and Title 21, United States Code, Section 881(b), and via a criminal seizure warrant under Title 21, United States Code, Section 853(f).

## BACKGROUND AND EXPERIENCE

3. I am a Task Force Officer assigned to the Milwaukee District Office of the Drug Enforcement Administration (DEA) as a member of the Tactical Diversion Squad (TDS). I specialize in pharmaceutical investigations. I have worked full-time as a federal task force officer for the past 8 years and a full-time law enforcement officer with the Greenfield Police Department for the past 19 years. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

4. During my tenure as a law enforcement officer, I have been involved in the investigation of drug traffickers in Milwaukee County, in the State of Wisconsin, across the United States, and internationally. I have received training in the investigation of drug trafficking, money laundering, and computer crimes. My training and experience includes the following:

a. Through informant interviews and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals and organizations finance, source, purchase, transport, and distribute controlled substances in Wisconsin, throughout the United States, and internationally.

b. I have used my training and experience to locate, identify, and seize multiple types of drugs, drug proceeds, and drug contraband.

c. I have conducted several investigations that have resulted in seizures of criminally derived property, including monetary instruments.

d. I know that controlled substances, drug paraphernalia, and drug proceeds are sent through the U.S. Postal Service system and other parcel services, such as FedEx and UPS, and I am familiar with many of the methods used by individuals who attempt to use mail services to illegally distribute controlled substances.

e. I have also relied upon informants to obtain controlled substances from drug traffickers and have made undercover purchases of controlled substances.

2

f.      I am familiar with the language used over the telephone and other electronic communications to discuss drug trafficking and know that the language is often limited, guarded, and coded. I know the various code names used to describe controlled substances. I also know that drug traffickers often use electronic devices (such as computers and cellular phones), electronic communication services (such as email and messaging applications), and social media to facilitate these crimes.

g.      I know that drug traffickers often register phones, mailboxes, bank accounts, electronic communication services, and other instrumentalities of drug trafficking in the names of others, also known as nominees, to evade law enforcement.

h.      I know that drug traffickers often keep documents and records about the sourcing, ordering, sale, transportation, and distribution of controlled substances.

i.      I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase or title these assets to avoid scrutiny from law enforcement officials. I know that drug traffickers often secure drug proceeds at locations within their dominion and control, such as their residences, businesses, and storage facilities, and in safes or other secure containers.

j.      I know that drug traffickers often attempt to protect and conceal drug proceeds through money laundering, including but not limited to domestic and international banks, securities brokers, service professionals, such as attorneys and accountants, casinos, real estate, shell corporations, business fronts, and otherwise legitimate businesses which generate large quantities of currency. I know that it is common for drug traffickers to obtain, secrete, transfer, conceal, or spend drug proceeds, such as currency, financial instruments, precious metals, gemstones, jewelry, books, real estate, and vehicles. I know that it is also common for drug traffickers to maintain documents and records of these drug proceeds, such as bank records, passbooks, money drafts, transaction records, letters of credit, money orders, bank drafts, titles, ownership documents, cashier's checks, bank checks, safe deposit box keys, money wrappers, and other documents relating to the purchase of financial instruments or the transfer of funds. I know that drug traffickers often purchase or title assets in fictitious names, aliases, or the names of relatives, associates, or business entities to avoid detection of these assets by government agencies. I know that even though these assets are titled or purchased by nominees, the drug traffickers actually own, use, and exercise dominion and control over these assets. The aforementioned books, records, receipts, notes, ledgers, and other documents are often maintained where the traffickers have ready access. These may be stored in hard copy or soft copy on paper, computers, cellular devices, and other electronic media or electronic storage devices.

k.      Digital currency, also known as crypto-currency, is generally defined as an electronic-sourced unit of value, which can substitute for fiat currency. Digital currency exists entirely on the Internet and is not stored in any physical form. Digital currency is not issued by any government, bank, or company and is instead generated and controlled through computer software operating on a decentralized peer-to-peer network.

3

l.   Bitcoin is one type of digital currency. Bitcoin payments are recorded in a public ledger maintained by peer-to-peer verification and is, therefore, not maintained by a single administrator or entity. Individuals can acquire bitcoins either by "mining" or by purchasing Bitcoins from other individuals. An individual can "mine" for Bitcoins by allowing his computing power to verify and record the bitcoin payments into a public ledger. Individuals are rewarded for this by receiving newly-created Bitcoins. An individual can send and receive Bitcoins through peer-to-peer digital transactions or by using a third-party broker. Such transactions can be performed on any type of computer.

m.   Bitcoins are stored on digital "wallets." A digital wallet essentially stores the access code that allows an individual to conduct bitcoin transactions on the public ledger. To access bitcoins on the public ledger, an individual must use a public address (or "public key") and a private address (or "private key"). The public address is similar to an account number while the private key is similar to an account password. Even though the public addresses of transactors are recorded on the public ledger, the true identities of the individuals or entities behind the public addresses are not recorded. If, however, a real individual or entity is linked to a public address, an investigator could determine what transactions were conducted by that individual or entity. Bitcoin transactions are, therefore, described as "pseudonymous," or partially anonymous.

n.   A Binance account has multiple "wallets," sub-accounts, or sub-wallets for holding different currency (e.g., U.S. dollars, Bitcoin, Dogecoin, TetherUS, Bitcoin Cash, Bitcoin Gold), but all of the sub-wallets are within one account. The funds can be readily moved from one currency to another currency within the same account. The value of the cryptocurrency relative to the U.S. dollar is constantly changing so the exact value is unknown until the funds are transferred out. Many Bitcoin companies allow the account holder to control the "key" for each wallet and that "key" is needed to transfer or remove funds. However, Binance controls the "key" to each of the wallets on its platform.

o.   Drug traffickers often use enhanced cryptocurrency, such as Bitcoin, to protect their identities, launder money, and conceal drug proceeds, because of the anonymity provided by cryptocurrency. Bitcoin is a decentralized digital currency without a central bank or single administrator. Payments are sent from user-to-user on the peer-to-peer bitcoin network without the need for intermediaries. These services add layers of anonymity to financial transactions to evade law enforcement.

p.   I know that drug traffickers often maintain large amounts of currency, including funds in readily accessible financial accounts, to finance their ongoing drug business. I know that those involved in drug trafficking or money laundering often keep records of their transactions. Because drug trafficking generates large sums of cash, drug traffickers often keep detailed records about the distribution of narcotics and the laundering of proceeds. I also know that drug trafficking and money laundering activities require the cooperation, association, and communication between and among a number of people. As a result, people who traffic in narcotics or launder money for such organizations possess documents that identify other members of their organization, such as telephone books, address books,

4

handwritten notations, telephone bills, and documents containing lists of names and addresses of criminal associates. Such records also provide information about the identities of co-conspirators who launder money and traffick drugs. I also know that drug traffickers commonly maintain addresses or telephone numbers which reflect names, addresses, or telephone numbers of their drug trafficking and money laundering associates in hard copy and soft copy on papers, books, computers, cellular devices, and other electronic media or electronic storage devices.

q. I know that drug traffickers often use electronic devices, such as telephones, cellular devices, computers, and currency counting machines to generate, transfer, count, record, or store the information described above and conduct drug trafficking and money laundering. I am familiar with computers, cellular devices, pagers, and other electronic media or electronic storage devices and their uses by drug traffickers to communicate with suppliers, customers, co-conspirators, and fellow traffickers. These devices often contain evidence of illegal activities in the form of communication records, voicemail, email, text messages, video and audio clips, location information, business records, and transaction records. I know drug traffickers take, store, preserve, or maintain photographs or videos of themselves, their associates, their property, their drugs, and their drug proceeds. These traffickers usually maintain these photographs or videos on computers, cellular devices, and other electronic media or electronic storage devices. Based upon my training and experience, I know that computer hardware and software can be important to a criminal investigation in two distinct and important respects: (1) the objects themselves may be instrumentalities, fruits, or evidence of crime; and (2) the objects may have been used to collect and store information about crimes. I know the following information can be retrieved to show evidence of use of a computer or smartphone to further the drug trade: system components, input devices, output devices, data storage devices, data transmission devices, and network devices and any data contained within such systems; computer media and any data contained within such media; operating system software, application or access program disks, manuals, books, brochures, or notes, computer access codes, user names, log files, configuration files, passwords, screen names, email addresses, IP addresses, and SIM cards.

r. I have participated in numerous drug trafficking investigations involving the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these devices. This has led to evidence of the crimes under investigation and corroborated information already known or suspected by law enforcement. I have regularly used electronic evidence to find proof relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of suspects and conspirators; and

s. I have also participated in the execution of numerous premises search warrants and arrests, where controlled substances, firearms, drug paraphernalia, drug proceeds, electronic devices, and records relating drug trafficking and drug proceeds were seized.

5

5.       This affidavit is based upon my personal knowledge and upon information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. Throughout this affidavit, I refer to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom I have had regular contact regarding this investigation.

6.       This affidavit is intended to show simply that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## STATUTORY BACKGROUND

7.       The Ryan Haight Online Pharmacy Consumer Protection Act of 2008, codified at Title 21, United States Code, Section 829, amended the Controlled Substances Act to address online pharmacies. No controlled substance that is a prescription drug as determined by the Federal Food, Drug and Cosmetic Act may be delivered, distributed, or dispensed by means of the Internet without a valid prescription, as required by Title 21, Code of Federal Regulations, Section 1306.09(a). *See* 21 U.S.C. §§ 829(e), 841(a)(1), 841(h), 843(c)(2)(A).

8.       According to Section 829, the term "valid prescription" means a prescription that is issued for a legitimate medical purpose in the usual course of professional practice by a practitioner who has conducted at least one in-person medical evaluation of the patient or a covering practitioner. The term "in-person medical evaluation" means a medical evaluation that is conducted with the patient in the physical presence of the practitioner, without regard to whether portions of the evaluation are conducted by other health professionals. The term "covering practitioner" means, with respect to the patient, a practitioner who conducts a medical evaluation (other than an in-person medical evaluation) at the request of a practitioner who has conducted at least one in-person medical evaluation of the patient or an evaluation

6

of the patient through the practice of telemedicine within the previous 24 months and is temporarily unavailable to conduct the evaluation of the patient.

9. The Ryan Haight Online Pharmacy Consumer Protection Act of 2008 also added new provisions to prevent the illegal distribution of controlled substances by means of the Internet, including registration requirements of online pharmacies, Internet pharmacy website disclosure information requirements, and prescription reporting requirements for online pharmacies. *See* 21 C.F.R. § 1301.11(b).

10. Under Title 21, United States Code, Section 853(d):

> There is a rebuttable presumption at trial that any property of a person convicted of a felony under this subchapter or subchapter II is subject to forfeiture under this section if the United States establishes by a preponderance of the evidence that—
>
> (1) such property was acquired by such person during the period of the violation of this subchapter or subchapter II or within a reasonable time after such period; and
>
> (2) there was no likely source for such property other than the violation of this subchapter or subchapter II.

21 U.S.C. § 853(d)

11. In addition, the Government may obtain a seizure warrant for up to the amount of criminal proceeds deposited into the account.

12. Under 18 U.S.C. § 984, a court may order the forfeiture of funds in a bank account into which monies subject to forfeiture have been deposited, without the need to trace the funds currently in the account to the specific deposits that are subject to forfeiture, up to the amount of the funds subject to forfeiture that have been deposited into the account within the past one-year period.

13. I submit that a restraining order under 21 U.S.C. § 853(e) may not be sufficient to assure the availability of the funds for forfeiture because I have been advised of cases in which, even after a restraining order or similar process has been issued to financial institution, the funds sought to be restrained were not effectively restrained by the financial institution. In my judgment, a seizure warrant

7

would be the most effective way to assure the availability of the money sought to be seized for forfeiture by the accompanying seizure warrant.

## PROBABLE CAUSE

### A. Background

14. In 2015, the Milwaukee District Office of the DEA initiated an investigation into a series of related internet pharmacies, which advertised controlled and non-controlled pharmaceuticals for sale without requiring a prescription. During the course of the investigation in 2019, case agents identified a co-conspirator in Florida (hereinafter referred to as "SOI-1") and a co-conspirator in Texas (hereinafter referred to as "SOI-2"). These two co-conspirators were working together to receive bulk shipments of controlled pharmaceuticals and reship them to customers throughout the United States. An undercover agent in the Eastern District of Wisconsin purchased controlled pharmaceuticals numerous times from SOI-1 and SOI-2 between July 2019 and August 2020. Subsequent analysis of these suspected controlled substances by the DEA laboratory identified controlled substances including heroin, methamphetamine, ketamine, tramadol, diazepam, alprazolam, and modafinil.

15. In August 2020, case agents executed federal search warrants in Florida and Texas at the residences of SOI-1 and SOI-2. Case agents seized electronic devices and documents containing evidence identifying many of the drug suppliers and customers, communication related to the sale of controlled substances, and money laundering of drug proceeds. Case agents also seized approximately $100,000 in drug proceeds (United States currency, bank accounts, and a Bitcoin account) and different types of controlled pharmaceuticals. Case agents have had the opportunity to interview SOI-1 and SOI-2 multiple times about the various drug suppliers and the circumstances around communication with the suppliers and drug payments to the suppliers. SOI-1 and SOI-2 identified multiple drug suppliers, email accounts, Bitcoin accounts, and WhatsApp accounts used by their drug suppliers to conduct drug transactions. These details were corroborated with the seized records and future undercover communication with

8

targets.

16.	SOI-1 said that he began as a payment processor. In June 2018, SOI-1 was contacted online by the co-owners of the online pharmacies www.buyetizolam.com ("BUYETIZOLAM") and www.comprartapentadol.com ("COMPRATAPENTADOL"). According to SOI-1, BUYETIZOLAM sells etizolam (an unapproved drug in the United States) and modafinil (a Schedule IV controlled substance), and COMPRATAPENTADOL sells tapentadol (a Schedule II controlled substance), modafinil (a Schedule IV controlled substance), tramadol (a Schedule IV controlled substance), and carisoprodol (a Schedule IV controlled substance). SOI-1 said that at least 98% of their sales are to customers in the United States. SOI-1 processed payments for all the orders placed on these websites, and SOI-1 provided cases agents with a list of all these orders, which included the identity of the customer, address of the customer, and amount paid for the drugs. SOI-1 identified the primary drug supplier for these websites as AKSHAY SAKODE, who is the owner of India-based distributor, PREMIER MEDICAL AGENCY. SOI-1 was directed to forward approximately half of the processed drug payments to the owners of these websites (PIERRE DAVID LETTINGA and KEVIN VAN DER HULST) and the other half to AKSHAY SAKODE. In total, SOI-1 processed $1,002,416.42 USD in drug payments from sales through these websites with the drugs being supplied by AKSHAY SAODE. More specifically, SOI-1 transferred drug proceeds in the amounts of $383,977.45 via bank transfer and $6,865.00, via Bitcoin to the website owners for sales from the websites. An unknown smaller amount was also transferred to co-conspirators of the website owners for their roles in the DTO. SOI-1 sent drug proceeds in the amount of $344,084.58 via bank transfer to AKSHAY SAKODE for supplying the drugs sold through the websites. The SOI-1 kept a 20% fee consisting of $200,483.28 for his role in processing the drug payments. In addition, SOI-1 profited separately by selling drugs he received directly from AKSHAY SAKODE. For these additional drugs, SOI-1 sent SAKODE another $36,864.00, via bank transfer and Bitcoin.

9

17. SOI-1 stated there are three co-owners of BUYETIZOLAM and COMPRATAPENTADOL. SOI-1 told the owners that he would not do business with them unless they were open with him about the operation. SOI-1 identified the owners as the following:

- PIERRE DAVID LETTINGA – 40% owner

- KEVIN VAN DER HULST – 40% owner

- "Ben" – 20% owner.

18. SOI-1 primarily communicated with LETTINGA, who is an equal owner with VAN DER HULST. SOI-1 communicated with LETTINGA via WhatsApp at phone number +34-691962857, and email address tinuschicken@gmail.com. SOI-1 sent the majority of the drug proceeds to LETTINGA's personal bank account in Germany and a smaller portion of funds via Bitcoin. LETTINGA is a citizen of the Netherlands, but resides in Spain. SOI-1 maintained an Excel spreadsheet file of all drug payments that SOI-1 processed for BUYETIZOLAM and COMPRATAPENTADOL, and saved this Excel file in Google Drive. LETTINGA had access to this file by using the email account tinuschicken@gmail.com. In addition, SOI-1 communicated with LETTINGA about drug orders, drug proceeds, and other drug business at email address tinuschicken@gmail.com and WhatsApp phone number +34-691962857.

19. SOI-1 reported that VAN DER HULST was primarily in charge of the technical side of the drug conspiracy by creating and maintaining the online pharmacy websites. SOI-1 communicated with VAN DER HULST by telephone and email several times. SOI-1 was provided with details to VAN DER HULST's personal bank account in the Netherlands, where VAN DER HULST resides. SOI-1 was directed to transfer drug payments to VAN DER HULST if funds were not able to be successfully sent to LETTINGA, but SOI-1 did not believe he ever had to send funds to VAN DER HULST's bank account.

20. The third owner of BUYETIZOLAM and COMPRATAPENTADOL is only known by SOI-1 as "Ben." Ben taught LETTINGA and VAN DER HULST how to run an illegal online pharmacy business. Ben is a 20% owner, owns additional online pharmacies, and is not engaged in the day-to-day

10

operations with BUYETIZOLAM and COMPRATAPENTADOL. SOI-1 believes Ben resides in Holland. SOI-1 was provided the email address pepebarato1@gmail.com by LETTINGA, and told that this email address belongs to a co-owner of COMPRATAPENTADOL.

21. BUYETIZOLAM and COMPRATAPENTADOL websites are primarily supplied by Indian pharmaceutical distributor PREMIER MEDICAL AGENCY, which is owned by AKSHAY SAKODE. SOI-1 would transfer half of the drug proceeds to LETTINGA and VAN DER HULST and the other half to SAKODE's bank account in India. SOI-1 also utilized PREMIER MEDICAL AGENCY as SOI-1's drug supplier for regular bulk drug shipments to SOI-1's partner, SOI-2, in Texas. These drug shipments were broken down and reshipped to U.S. customers. SOI-1 stated some of these drugs were shipped to undercover case agents in the Eastern District of Wisconsin. SOI-1 communicated with SAKODE via WhatsApp at phone number +91-7304096699, and Google email address pmagencysales@gmail.com. The communication with SAKODE, via WhatsApp and email, consisted of communication related to drug orders and drug payments.

22. Case agents reviewed the BUYETIZOLAM online pharmacy website days after the search warrants were executed in connection with SOI-1 and SOI-2. SOI-1 ended all communication with the owners of BUYETIZOLAM. The owners posted on the website that they had not heard from SOI-1, and as a result, payment processing options were very limited. This message to customers about SOI-1 being posted on the website corroborates the statement provided by SOI-1.

23. On December 1, 2020, case agents conducted an undercover purchase from BUYETIZOLAM via the website. Case agents purchased 500 tablets containing a mixture of tapentadol 150mg (a Schedule II controlled substance) and etizolam 2mg (an unapproved drug in the United States). In connection with the purchase, case agents were directed, via email, to conduct a bank transfer to an account "Bolle Boos" with TransferWise. Case agents received the shipment of the 500 tablets of the tapentadol and etizolam mixture in blister packs, which were shipped from India by the shipper PREMIER

11

MEDICAL AGENCY. The medications were sent to the DEA laboratory in Chicago, and tested positive for the presence of tapentadol.

24. Case agents later received records from TransferWise, pursuant to a DEA administrative subpoena, related to the account which received the undercover's drug payment. This TransferWise account belongs to PIERRE DAVID LETTINGA in Spain. Records revealed that funds from this account were transferred to another TransferWise account listing to KEVIN VAN DER HULST. LETTINGA declared his business to TransferWise as "coffee, alarm systems, new niches, food, owner of Spanishmortage.net, and buy and sell domain names," even though the undercover's drug payment went to this account. An image of LETTINGA's Netherlands passport was provided when he created the account to prove his identity. The account holder details are as follows:

- Account holder: Bolle Boos

- TransferWise Debit Card issued to PIERRE DAVID LETTINGA

- Debit Card issue Address: C/ Repetidor 25 - 212 Altea Alicante 03590 Spain

- Company Shareholder/Director: PIERRE DAVID LETTINGA - DOB June 1, 1970

- Company Address: Calle Sol 20 03590 Altea Spain

- Phone: +34 691962857

- Email: abenc.a@gmail.com.

25. Case agents also received TransferWise records pertaining to accounts associated with PREMIER MEDICAL AGENCY, pursuant to the same DEA administrative subpoena. The account holder is AKSHAY SAKODE, and he proved his identity by providing his Indian Export/Import license depicting his photograph, an Indian tax card, and his Indian driver's license. The account holder details are as follows:

- Company Name: PREMIER MEDICAL AGENCY

- Company Address: 136 Sandesh Dawa Bazar, near haj house 440018 Nagpur India

12

- Account Holder: AKSHAY SAKODE

- Account Holder Address: Daksinamurti Sq Mahal Nagpur 440032 Nagpur India

- Company Shareholder/Director: AKSHAY SAKODE - DOB September 19, 1994

- Phone: +917304096699

- Email: akshaysakode@gmail.com.

26. Case agents later learned from TransferWise that as a result of receiving a subpoena, TransferWise suspended LETTINGA's account. This resulted in instructions being posted on the BUYETIZOLAM website that customers should not ever inform their bank they are purchasing medication. The owners of BUYETIZOLAM believed the TransferWise account was suspended due to a customer reporting the purchase was for medication, and they did not know it was due to TransferWise receiving a subpoena.

27. On December 21, 2020, case agents conducted an undercover purchase directly from WhatsApp, via Indian telephone number +91-7304096699. SOI-1 and other records identified this phone number as belonging to AKSHAY SAKODE, the owner of PREMIER MEDICAL AGENCY. Case agents purchased 2,000 tablets of tapentadol 100mg (a Schedule II controlled substance) and 1,000 tablets of modafinil 200mg (a Schedule IV controlled substance). In connection with the purchase, case agents were directed, via WhatsApp message from +91-7304096699 and email address pmagencysales@gmail.com, to conduct a bank transfer to bank account PREMIER MEDICAL AGENCY in India. Case agents were emailed five tracking numbers from pmagencysales@gmail.com and further communicated with this email address about payment and the drug transaction. Many of these emails contained an email signature "AKSHAY SAKODE." Case agents received five parcels from PREMIER MEDICAL AGENCY containing the majority of suspected tapentadol and modafinil tablets packaged in blister packs purporting the tablets to be tapentadol 100mg and modafinil 200mg. These parcels arrived directly from India and also from India, through Singapore. Two additional parcels containing the same

13

tablets in blister packs were seized by U.S. Customs and Border Protection and turned over to case agents. The medication was sent to the DEA laboratory in Chicago, and the analysis results are pending.

28. On January 16, 2021, case agents communicated with PREMIER MEDICAL AGENCY and AKSHAY SAKODE via email at pmagencysales@gmail.com and via WhatsApp phone number +91-7304096699. Case agents inquired about the availability of specific controlled substances and received a message back from WhatsApp phone number +91-7304096699 and email address pmagencysales@gmail.com. The email included an email signature and contact information for further discussion. The email signature listed two domains for the two PREMIER MEDICAL AGENCY online pharmacy websites. Furthermore, the email signature provided phone number +91-9356460394 to be contacted directly via phone or by the applications Telegram, WhatsApp, or Signal regarding PREMIER MEDICAL AGENCY. Case agents reviewed the two online pharmacy websites, and one of the websites has the phone number +91-9356460394 to be contacted for business with PREMIER MEDICAL AGENCY. One of the websites also identified the PREMIER MEDICAL AGENCY Bitcoin address used to receive drug payments as 1DB11NPj5FiUHSa2GHto54CC3GeRWpW8P5 (Coinbase account).

29. Case agents received records from Coinbase, pursuant to a DEA administrative subpoena, related to the PREMIER MEDICAL AGENCY's Bitcoin address. The Coinbase records identified the account holder as the following:

- User ID: 5a26e13bc10ca502cd99fbc1

- Name: Akshay SAKODE

- Email: akshaysakode@gmail.com

- Created date: December 5, 2017 10:11 a.m. PST.

30. Between January 26, 2021 and March 9, 2021, an undercover case agent engaged in email communication with who was originally believed to be LETTINGA, but later found to most likely be VAN DER HULST. The undercover began receiving emails from dave@promotions.buyetizolam.com

14

offering promotions on medications from BUYETIZOLAM. These emails began after the undercover placed the December 2020 purchase from BUYETIZOLAM. Based on the email address, case agents believed the person sending the emails was PIERRE DAVID LETTINGA.

31. On January 26, 2021, the undercover emailed dave@promotions.buyetizolam.com stating the undercover is a customer and noticed the complications they are having with processing payments since SOI-1 ended processing their payments. The undercover identified himself as a pill reshipper located in the U.S. and said he works with a reliable payment processor. "Dave" replied saying he was interested in the services of this payment processor to process the drug payments, and the undercover would be compensated with a discount on bulk orders. The undercover later replied stating the payment processor, who is also in the U.S., is cautious of communicating by email because the products are illegal so he wanted to meet in person with "Dave." "Dave" replied stating this sounded like an FBI ploy, but "Dave" said he would be willing to have a phone call with the undercover. On March 9, 2021, "Dave" emailed the undercover saying he would call shortly. The undercover replied stating to provide the undercover with a specific time so the undercover would be prepared and available. "Dave" tried calling the undercover twice on March 9, 2021 from a blocked phone number without informing the undercover when he would be calling. As a result, the undercover was not available and did not answer either phone call. "Dave" did leave a brief voicemail and had a foreign accent.

32. Case agents later received records from AT&T Wireless which identified the phone number "Dave" used to call the undercover on March 9, 2021. The identified phone number for both incoming phone calls was +31-644706890. Case agents know this phone number is used by KEVIN VAN DER HULST.

33. On February 12, 2021, case agents received records from WhatsApp related to multiple phone numbers, pursuant to a federal search warrant signed on February 12, 2021 by the Honorable Stephen Dries, United States Magistrate Judge for the Eastern District of Wisconsin. Records provided

15

for three of the WhatsApp accounts is as follows:

+91-7304096699 (suspected to be used by AKSHAY SAKODE)

- Device: Apple iPhone X

- Registered email: akshaysakode@gmail.com

- Last IP: 2402:8100:30af:dff9:2844:d99a:9073 on February 12, 2021

- Profile photo of an adult Indian male using a telephone

- 157 messages (messages with +91 India and +90 Turkey country code numbers)

- 380 phone number contacts in Address Book

- Numerous country codes

+91-9356460394 (suspected PREMIER MEDICAL AGENCY)

- Device: Samsung a7xelte

- Last IP: 2409:4042:e18:f357:6dcb:4e00 on February 12, 2021

- 3 messages

- 22 phone number contacts in Address Book

  o All of the numbers are country codes in India and Philippines

+34-691962857 (suspected to be used by PIERRE DAVID LETTINGA)

- Device: Oppo OP4BDCL1

- Last IP: 85.52.230.184 on February 12, 2021

- IP address located in Spain

- Profile photo of a young child

- 0 messages

- 101 phone number contacts in Address Book

16

o All of the numbers are country codes in the Netherlands, Spain, Belgium, United Kingdom, Switzerland, U.S., and India (The sole Indian phone number belongs to AKSHAY SAKODE).

34. On February 19, 2021, case agents received records from TransferWise, pursuant to a DEA administrative subpoena, related to the account listing to KEVIN VAN DER HULST. Case agents requested these records because the initial TransferWise account (listing to PIERRE DAVID LETTINGA), to which the undercover sent the drug payment transferred funds to this KEVIN VAN DER HULST TransferWise account. An image of VAN DER HULST's Netherlands passport was provided when he created the account to prove identity. The account holder details are as follows:

- Name: KEVIN VAN DER HULST

- DOB: July 31, 1988

- Phone: +31-644706890

- Email: kevinvanderhulst@gmail.com

- Address: Julianastraat 67A 2405CG Alphen aan den Rijn Netherlands.

35. On March 10, 2021, case agents conducted an undercover purchase from BUYETIZOLAM, via the website. Case agents purchased 770 tablets containing a mixture of tapentadol 150mg (a Schedule II controlled substance) and etizolam 2mg (an unapproved drug in the United States). In connection with the purchase, case agents were directed via email to conduct a bank transfer via Zelle, to a bank account linked to email address p3rv3rs311@gmail.com and account holder MATTHEW PETTIT. Case agents asked the customer service representative "Jackie" to speak with "Dave" because Dave had told the undercover he could get a discount for a bulk order. Jackie was referring to "Dave" when she told the undercover "is all good taking it kinda easy after years of hard work and dedication." Jackie provided a discount to the undercover, and it was at this time that case agents believed LETTINGA may not be as involved with BUYETIZOLAM as he used to be. Case agents received one of the two

17

parcels which contained 380 tablets of the tapentadol and etizolam mixture in blister packs, which was shipped from India, through Germany, by the shipper PREMIER MEDICAL AGENCY. The customs declaration falsely claimed the product to be "health supplement products." The medications were sent to the DEA laboratory in Chicago, and tested positive for the presence of tapentadol and etizolam. The second parcel was seized by U.S. Customs and Border Protection and later turned over to case agents. This seized parcel contained the same tablets, blister packs, and shipping label details. The medication from this seized parcel was sent to the DEA laboratory in Chicago, and the analysis results are pending.

36. On April 13, 2021, case agents received records from Google related to multiple Google email addresses, pursuant to a federal search warrant signed on February 22, 2021 by the Honorable Stephen Dries, United States Magistrate Judge for the Eastern District of Wisconsin. Some of these email addresses are as follows:

- pmagencysales@gmail.com (PREMIER MEDICAL AGENCY)
- tinuschicken@gmail.com (PIERRE DAVID LETTINGA)
- kevinvanderhulst@gmail.com (KEVIN VAN DER HULST)

37. Case agents reviewed the records from each email address and the following is a summary:

**pmagencysales@gmail.com**

- The user of this account identified himself as AKSHAY SAKODE and medicine exporter and drop shipper at PREMIER MEDICAL AGENCY.
- Numerous incoming drug orders for BUYETIZOLAM and COMPRATAPENTADOL.
- The drug orders were being sent to BUYETIZOLAM and COMPRATAPENTADOL customer service email addresses, but pmagencysales@gmail.com was automatically copied on these emails.
- Emails documenting SAKODE received funds into his Indian bank account received from PIERRE DAVID LETTINGA and KEVIN VAN DER HULST.

18

- Emails documenting drug orders shipped to PIERRE DAVID LETTINGA and KEVIN VAN DER HULST.
- Emails showing SOI-1 was a payment processor for the DTO.

### tinuschicken@gmail.com

- A contract between SOI-1 and LETTINGA documenting SOI-1's responsibilities as the payment processor for LETTINGA, VAN DER HULST, and SAKODE. The bank account details, phone numbers, addresses, and email addresses for LETTINGA, VAN DER HULST, and SAKODE were included in the contract.
- The user of this email account and the director of BUYETIZOLAM was identified in multiple emails as PIERRE DAVID LETTINGA.
- An email from iPayTotal to BUYETIZOLAM and VAN DER HULST, copied to LETTINGA, reporting it was determined they are illegally selling controlled drugs, importing drugs to other countries, dispensing drugs without being a licensed pharmacy, etc. As a result, iPayTotal was immediately terminating their account with BUYETIZOLAM.
- Numerous emails documenting BUYETIZOLAM drug orders and payment confirmation.
- Emails to and from BUYETIZOLAM, AKSHAY SAKODE, and KEVIN VAN DER HULST.
- "Test email" from LETTINGA's other email address abenc.a@gmail.com (Pdl Dave).
- Multiple emails sent to BUYETIZOLAM customers, directing payment be sent, via Zelle, to MATTHEW PETTIT.
- Some emails with the email signature "Kevin from BUYETIZOLAM."

### kevinvanderhulst@gmail.com

- The user of this account identified himself as KEVIN VAN DER HULST.

19

- Numerous incoming emails from what appears to be an in-home video/alarm security system. This video/alarm system captures photographs and sends them to this email account. Case agents can positively identify the person entering and exiting what appears to be a front door in many of the photographs as KEVIN VAN DER HULST.

- Numerous photographs of VAN DER HULST from a linked WhatsApp account.

- Email communication between VAN DER HULST and TransferWise about the closing of VAN DER HULST's account.

- Incoming emails for BUYETIZOLAM password reset requests.

- Incoming email from LETTINGA directing VAN DER HULST to contact the SOI-1 about payment.

- SOI-1 contract forwarded to VAN DER HULST from LETTINGA.

- Incoming emails from SOI-1.

- Photographs of drugs being sold which were emailed from PREMIER MEDICAL AGENCY, to BUYETIZOLAM, to LETTINGA, and then to VAN DER HULST.

- Incoming email from TransferWise confirming an attempted payment from BUYETIZOLAM payment processor MATTHEW PETTIT to VAN DER HULST.

38. Case agents served multiple DEA administrative subpoenas, grand jury subpoenas, and warrants seeking records associated with the BUYETIZOLAM payment processor, MATTHEW PETTIT, who replaced SOI-1 as the payment processor. PETTIT was confirmed to have processed at least $120,167.25 in drug payments using Zelle and CashApp between December 31, 2020 and April 28, 2021. These drug payments were then transferred to bank accounts registered to PREMIER MEDICAL AGENCY, Nets Danish Fashions, and a TransferWise account.

39. On May 4, 2021, case agents began the process of conducting an undercover purchase from BUYETIZOLAM via the website. Case agents purchased 1,400 tablets containing a mixture of tapentadol

20

100mg (a Schedule II controlled substance) and carisoprodol 350mg (a Schedule IV controlled substance). In connection with the purchase, case agents were directed, via email, to conduct a bank transfer to an Indian bank account. The undercover expressed an interest in paying by Zelle again to a U.S. bank account. The undercover was informed they had a complication with their Zelle payment processor (believed to be MATTHEW PETTIT), and they said TransferWise closed all but one of their accounts. The undercover canceled this order until Zelle was again an option.

40. On June 23, 2021, case agents arrested MATTHEW PETTIT and executed a federal search warrant at his residence located at 4504 Derby Ct. NW, Albuquerque, New Mexico 87114. This search warrant was signed on June 22, 2021 by the Honorable Jerry Ritter, United States Magistrate Judge for the District of New Mexico.

41. PETTIT provided a recorded statement to case agents after waiving his rights on June 23, 2021. PETTIT stated he was working for "Noran," whose real name PETTIT believed may be Matthew. Noran was a vendor on the Darkweb selling credit card information and opening fraudulent small business loans using COVID-19 relief funding. PETTIT believed Noran may reside in the Netherlands, but said he owns properties in California. PETTIT was told he was not proficient at committing fraud on behalf of Noran, so Noran referred PETTIT to "Kev" who owns BUYETIZOLAM. Case agents believe "Kev" is KEVIN VAN DER HULST.

42. In November 2020, PETTIT began processing drug payments for VAN DER HULST. PETTIT communicated with VAN DER HULST, via the Telegram application. This is the same application that VAN DER HULST told an undercover was his preferred means of communication. In addition to processing drug payments, PETTIT would also help VAN DER HULST edit the text on the BUYETIZOLAM website because VAN DER HULST's English is limited. PETTIT processed approximately $150,000 in drug payments for VAN DER HULST. Most of the drug payments were, via Zelle, using PETTIT's U.S. bank accounts, and to a lesser degree VAN DER HULST utilized CashApp

21

to process payments.  PETTIT would message images of the received drug payments to VAN DER HULST, via Telegram.  PETTIT then transferred the drug proceeds to accounts as directed by VAN DER HULST.  PETTIT recalled sending funds to a TransferWise account, through CashApp, to an account affiliated with Noran called "Danish Fashion Living", and to a PREMIER MEDICAL AGENCY account.  PETTIT stated that VAN DER HULST owns the BUYETIZOLAM website, but the drugs are supplied by a drug shipper in India.

43.    On July 26, 2021, case agents met with SOI-1 in order for SOI-1 to make recorded video or voice calls to LETTINGA (phone number +34-691962857) and VAN DER HULST (phone number +31-644706890).  Utilizing WhatsApp, SOI-1 messaged both of them in a group chat stating that SOI-1 wanted to speak with them.  They both replied, and LETTINGA told SOI-1 to call him.

44.    On July 26, 2021, SOI-1 made an approximately eleven minute recorded video call to LETTINGA.  (Note: Case agents attempted to audio and video record the call, but the video portion of the recording was not successful.  As a result, the video call is only audio recorded.)  SOI-1 did describe LETTINGA to case agents after the call, and this description is consistent with LETTINGA.  SOI-1 referred to LETTINGA as "Dave" and "David" multiple times throughout the call.  SOI-1 apologized for disappearing on LETTINGA and VAN DER HULST.  SOI-1 stated his partner had to shut things down, and SOI-1 also needed to "go dark."

45.    LETTINGA said they lost a lot of money because of SOI-1.  LETTINGA said they were doing about $100,000 per month after SOI-1 was gone.  LETTINGA said there were three possibilities of what they thought happened to the SOI-1 which are he was dead, he was in jail, or they didn't know. LETTINGA said they lost a lot of money because the SOI-1 was the one taking in money from other people.  LETTINGA stated he just spoke with "Kevin" (believed to be KEVIN VAN DER HULST), and told SOI-1 there is still money to make.  LETTINGA said they are not angry with SOI-1 and even hired a detective to try to learn what happened with SOI-1.  The SOI-1 apologized for disappearing because he

22

was the one taking in payments. SOI-1 said he believed he owed them about $10,000 to $12,000. The SOI-1 said he has a new domestic partner, and LETTINGA specifically asked if the partner sells etizolam. LETTINGA said it is currently difficult to get etizolam since the export ban in India, but perhaps "Kevin" can get it into the U.S. from Holland. LETTINGA said SOI-1 could have profited between $15,000 and $22,000 per month. SOI-1 said his spouse wanted SOI-1 to stop, but now the SOI-1's spouse misses the wealthy lifestyle. SOI-1 wants to buy the drugs from LETTINGA and VAN DER HULST, have the drugs shipped to the U.S., and SOI-1 can reship them to U.S. customers. SOI-1 said this was the plan they had already discussed before SOI-1 disappeared. LETTINGA said there is always a way, but he promised "Kevin" he would not to do pills any longer. LETTINGA said that "Kevin" spent a lot of money to buy out LETTINGA and "Ben." LETTINGA believes Ben is now out of the business, but "Kevin" will still work with the SOI-1. SOI-1 said he would try to pay LETTINGA back about $10,000 he owes, and LETTINGA requested it be paid in Bitcoin. LETTINGA said he would have "Kevin" text message SOI-1 about a phone call and doing business together.

46.     On July 27, 2021, SOI-1 made an approximately fourteen minute recorded video call to VAN DER HULST. (Note: Case agents successfully audio and video recorded the call, but VAN DER HULSTS's camera was turned off. As a result, VAN DER HULST's face could not be seen in the audio/video recording.) SOI-1 referred to VAN DER HULST as "Kevin" multiple times throughout the call. SOI-1 apologized for disappearing on LETTINGA and VAN DER HULST, and he wanted to apologize face to face. VAN DER HULST said his phone camera was not working for a video call.

47.     SOI-1 said he was in business with "you guys" and also had his own domestic shipping. The domestic shipping was going great until SOI-1 had to shut down. SOI-1 said he spoke with "David" (referring to LETTINGA), and LETTINGA said he sold all the websites such as BUYETIZOLAM to "Kevin." SOI-1 now wants to work with "Kevin" (referring to VAN DER HULST). VAN DER HULST informed the SOI-1 that etizolam is no longer being sold from India because of

23

regulations by the World Health Organization and United Nations. VAN DER HULST is now using a different but similar medicine. This regulation change occurred one month after VAN DER HULST took over the website. VAN DER HULST said he is back to "$35,000 to $40,000 after two months." VAN DER HULST stated there are trust concerns because he knows people were buying directly from SOI-1 behind their back. VAN DER HULST said they were worried and not mad when SOI-1 disappeared. VAN DER HULST said he would consider how to proceed with his business arrangement with SOI-1. VAN DER HULST said he had concerns about having SOI-1 ship domestically because it would be illegal, while shipping from India is not illegal. VAN DER HULST acknowledged payment processing still needs to be done, but he needs more time to think about it. SOI-1 acknowledged getting etizolam directly from "Akshay" (referring to BUYETIZOLAM's supplier AKSHAY SAKODE in India) behind the backs of VAN DER HULST and LETTINGA. SOI-1 asked VAN DER HULST what other products are available similar to etizolam. VAN DER HULST said the SOI-1 can look at the website, but one medication that VAN DER HULST mentioned was tapentadol (a Schedule II controlled substance). SOI-1 reminded VAN DER HULST that before SOI-1 disappeared, the arrangement was for SOI-1 to handle domestic shipping for LETTINGA and VAN DER HULST. VAN DER HULST said he recalled that discussion, but now he needs time to consider options. VAN DER HULST said that on July 28, 2021, he would be flying to Spain for vacation to visit friends and family. VAN DER HULST said that he and SOI-1 would talk again when VAN DER HULST returns home. VAN DER HULST acknowledged paying a lot of money to buy the website. VAN DER HULST stated BUYETIZOLAM is the main website while COMPRARTAPENTADOL and others are not as active.

48. In August 2021, Spanish authorities provided case agents personal details of PIERRE DAVID LETTINGA to include address, nationality, passport photograph, and known phone numbers. One of the known phone numbers provided by Spanish authorities is +34-691962857. This is the same phone number SOI-1 communicated at with LETTINGA, and the same phone number

24

LETTINGA has listed on several of his accounts.

49.    In August 2021, Dutch authorities identified the phone subscriber for phone number +31-644706890 as KEVIN VAN DER HULST.  This is the same phone number SOI-1 communicated at with VAN DER HULST, the same phone number VAN DER HULST has listed on several of his accounts, and the same number that was "blocked" when used to call the undercover to discuss BUYETIZOLAM payment processing.

50.    On August 11, 2021, case agents conducted an undercover purchase from BUYETIZOLAM via the website.  Case agents purchased 500 tablets containing a mixture of tapentadol 150mg (a Schedule II controlled substance) and carisoprodol 350mg (a schedule IV controlled substance). In connection with the purchase, case agents were directed, via email, to conduct a Bitcoin transfer to the Bitcoin address 331BJiVMa1gDxuR3vryTSHnzzRusjYELzT. Case agents received the shipment of the 500 tablets of the tapentadol and carisoprodol mixture in blister packs, which were shipped from India, through Germany, by the shipper PREMIER MEDICAL AGENCY.  The parcel contained a customs declaration which falsely declared the contents as "health supplement products."  The medications were sent to the DEA laboratory in Chicago, and tested positive for the presence of tapentadol and carisoprodol.

51.    Following this August 11, 2021 undercover purchase from BUYETIZOLAM, case agents began an extensive analysis of tracing the Bitcoin drug payment and an elaborate money laundering system using numerous private crypto currency wallets and public crypto currency wallets with multiple exchanges was uncovered.  This analysis has identified multiple cryptocurrency wallets containing laundered illicit proceeds case agents are seeking to seize.

52.    During the undercover payment of 0.01284251 BTC (approximately $598.05 USD) on August 11, 2021,  the undercover drug payment was processed through a service, BTCPay Server, used by the BUYETIZOLAM website.  Case agents learned BTCPay Server is a decentralized payment processing service that provides clients, such as BUYETIZOLAM, a way to accept bitcoin payments

25

through their platform. Payments are completed as "peer-to-peer", meaning the payment likely went directly from the undercover to a wallet belonging to BUYETIZOLAM and not to a third-party wallet.

53. Case agents monitored the undercover drug payment which remained in the target's Bitcoin address 331BJiVMa1gDxuR3vryTSHnzzRusjYELzT from August 11, 2021 until November 2, 2021. It was learned this target Bitcoin address was clustered with a total of 13 Bitcoin addresses all contained within one target private wallet. This target wallet used by BUYETIZOLAM will be referred to as "private wallet #1." Private wallet #1 received a total of approximately 0.101338 BTC (approximately $6,173.30 USD at the time) between April 25, 2021 and November 2, 2021. Case agents know this is consistent with the multiple addresses within private wallet #1 containing customer drug payments. On November 2, 2021, the undercover drug payment, along with the funds from the additional 12 Bitcoin addresses (0.101338 BTC), were transferred to BTC address bc1qnmzamyl0c4rd9mzd5myklcsq72umhrn9e8quak. This target BTC address was also a private address which case agents know is another layer of concealment. Analysis revealed that BTC address bc1qnmzamyl0c4rd9mzd5myklcsq72umhrn9e8quak is part of another larger private wallet used to receive suspected drug payments from many wallets similar to private wallet #1. This larger private wallet containing BTC address bc1qnmzamyl0c4rd9mzd5myklcsq72umhrn9e8quak will be referred to as "private wallet #2." Private wallet #2 consists of 94 BTC addresses which has received approximately 21.45198666 BTC (approximately $918,145.03 USD) between June 9, 2020 and January 11, 2022. Approximately 20.86592919 BTC have been transferred out of private wallet #2 to other accounts belonging to the DTO. The current balance of private wallet #2 is 0.57741827 BTC (approximately $28,178.01 USD).

54. Case agents identified some of the account holders who made suspected drug payments contained in the 13 clustered Bitcoin addresses referred to as private wallet #1. These records were acquired pursuant to DEA administrative subpoenas. The identified account holders are as follows:

- Paxful account – Peter Eugene Hakanson – 11549 Pokonen Rd., Floodwood, MN 55736

26

- Coinbase account – Elizabeth Larcom – 2642 Penbrook Lane, State College, PA 16801

- Coinbase account – Pedro Ortiz – 6429 Arcadia St., Corona, CA 92880

- Coinbase account – Denise Jackson – 226 Crestwood Dr., Clifton Heights, PA 19018

- Coinbase account – Zarina Samarchyants – 5 Whittier Lane #5, Easton, MA 02356

- Coinbase account – Gregory Heimann – 4633 Marine Avenue, #231, Lawndale, CA 90260

- Coinbase account – Mark Stroeve – 914 Patricia Court, Fruita, CO 81521

- Coinbase account – Rachel Etheridge – 227 Pine Street, Saint Marie, MT 59231

55. Analysis revealed the undercover's drug payment was transferred from private wallet #2 to a BTC address with KuCoin exchange. A crypto currency exchange can be described as a bank for cryptocurrency, such as Bitcoin. The remaining funds from private wallet #2 used to receive and transfer drug payments were transferred to additional KuCoin accounts, Binance, CoinDCX, Kraken, and MEXC, all of which are crypto currency exchanges. Case agents received records, pursuant to DEA administrative subpoenas, from KuCoin, Binance, and Kraken which all received these suspected drug proceeds from private wallet #2.

56. KuCoin records identified suspected drug proceeds from private wallet #2 (containing the undercover's drug payment) were transferred to three KuCoin accounts. The specific account which received the undercover's drug payment is assigned email address **tigerliontrader@protonmail.com**. The following three accounts and their account balances as of December 7, 2021 are as follows:

- Email: alexgodmanbe@gmail.com

- Approximate Balance in USD: $56,889.00

| Asset Ticker | Asset Name | Total Position | Estimated USDT Value |
|---|---|---|---|
| DOGE | Dogecoin | 37406.0289 | 8203.04870355326643834664 |
| USDT | Tether | 48685.946420226789 | 48685.946420226789 |
| ETH | Ethereum | 0.00000003 | 0.00013519761531091404 |

- **Email: tigerliontrader@protonmail.com**

- Approximate Balance in USD: $104,255.60

| Asset Ticker | Asset Name | Total Position | Estimated USDT Value |
|---|---|---|---|
| VRA | Verasity | 609532.81515575 | 35733.92345788957274830082 |
| LINK | ChainLink | 173.14080178 | 4377.21810836242882800092 |
| BTC | Bitcoin | 0.48278941 | 27856.928627943245352541 |
| ADA | Cardano | 459.81696575 | 733.47690896139292175029 |
| CRO | Crypto.com Coin | 13035.5157 | 9231.79560511478791186352 |
| SOL | Solana | 0.00002407 | 0.00500873040429024383 |
| VET | Vechain | 5630.97902842 | 679.01594360377029267655 |
| TUSD | TrueUSD | 0.00000050091291 | 0.00000050053665989067 |
| UST | TerraUSD | 0.00008830968419 | 0.00008846049576681028 |
| DOGE | Dogecoin | 0.00007156 | 0.0000156929292546815 |
| USDT | Tether | 25643.234230842957859051 | 25643.234230842957859051 |
| SHIB | SHIBA INU | 0.00003216 | 0.0000000153034448986 |

- Email: onlineshipping24x7@protonmail.com

- Approximate Balance in USD: $7,469.71

| Asset Ticker | Asset Name | Total Position | Estimated USDT Value |
|---|---|---|---|
| SAND | The Sandbox | 250 | 1741.3622052784405875 |
| USDT | Tether | 63.70398240153229 | 63.70398240153229 |
| SOL | Solana | 0.00004517 | 0.00939943300215165408 |
| GALAX | Gala | 5000 | 3261.03098395985546 |
| CHZ | Chiliz | 2423.1011 | 1109.67145153301411320103 |
| AVAX | Avalanche | 11 | 1293.948897473739266628 |

57. Case agents believe the funds in all three of these KuCoin accounts (alexgodmanbe@gmail.com, **tigerliontrader@protonmail.com,** and onlineshipping24x7@protonmail.com) contain drug proceeds and are being used to launder funds used by this DTO. Case agents know that the amounts of cryptocurrency, the quantity of transactions, and the attempted concealing of source of funds are all consistent with drug proceeds and money laundering. Furthermore, the undercover's drug payment was transferred into the **tigerliontrader@protonmail.com** KuCoin account, and the funds transferred into the other two KuCoin accounts came from the same private wallet #2 that the undercover's drug payment came from. These KuCoin accounts case agents are sought forfeiture of are as follows:

28

- KuCoin account primary ID # 67435253, Sub Account ID # 67435253, associated email address of **tigerliontrader@protonmail.com**

- KuCoin account primary ID #67429710, Sub Account ID #67429710, associated email address of alexgodmanbe@gmail.com

- KuCoin account primary ID # 73008568, Sub Account ID # 73008568, associated email address of onlineshipping24x7@protonmail.com

58.     Case agents further analyzed the KuCoin records for all three KuCoin accounts receiving suspected drug proceeds.  The IP addresses used by the account user(s) to access each account were reviewed and found several of the IP addresses being used to access each of the three accounts were the same.  Case agents know this means that each account was logged into from the same location or same device; therefore, case agents believe that each account is controlled by the same person.  The following are the overlapping IP addresses, which were used by the three KuCoin accounts:

- KuCoin account primary ID # 67435253, Sub Account ID # 67435253, associated email address of **tigerliontrader@protonmail.com**

    o   IP address 106.202.196.53 located in India used one time

    o   IP address 110.226.161.193 located in India used six times

    o   IP address 106.213.102.26 located in India used two times

    o   IP address 106.202.195.58 located in India used one time

- KuCoin account primary ID #67429710, Sub Account ID #67429710, associated email address of alexgodmanbe@gmail.com

    o   IP address 106.202.196.53 located in India used three times

    o   IP address 106.202.195.58 located in India used one time

    o   IP address 106.213.102.26 located in India used one time

    o   IP address 110.226.161.193 located in India used three times

29

- IP address 188.214.152.88 located in Vietnam used one time

- KuCoin account primary ID # 73008568, Sub Account ID # 73008568, associated email address of onlineshipping24x7@protonmail.com

  - IP address 106.202.196.53 located in India used eight times

  - IP address 106.202.195.58 located in India used two times

  - IP address 188.214.152.88 located in Vietnam used one time

59. Kraken records identified suspected drug proceeds which private wallet #2 (containing the undercover's drug payment) transferred multiple times to the crypto currency exchange Kraken. The records revealed all of the funds sent to Kraken were transferred to the same Kraken account. The account holder details are as follows:

- Kraken account #AA76 N84G K4FV QRWA

- Name: KEVIN VAN DER HULST

- DOB: July 31, 1988

- Address: Julianastraat 67a, Alphen aan den Rijn, Provincie Zuid-Holland, 2405 CG, Netherlands

- Email: kevinvanderhulst@gmail.com

- Phone: +31-644706890 (same phone number VAN DER HULST used to communicate with SOI-1)

- Bank 1: ABN Amro Bank N.V.

  - Bank location: Amsterdam, Netherlands

  - Bank account number: NL41ABNA0481809201

- Bank 2: N26 Bank

  - Bank location: Berlin, Germany

  - Bank account number: DE16100110012623589663

30

60.     The Kraken records include an image of VAN DER HULST's Netherlands photograph driver's license and a bill addressed to him to verify his identity as the creator of the account. IP addresses used to access this account indicate the user was located in the Netherlands and Spain. Case agents are aware that VAN DER HULST resides in the Netherlands and travels to Spain which is where LETTINGA resides. SOI-1 stated he was directed to transfer drug proceeds derived from processing BUYETIZOLAM drug purchases to the same Netherlands bank account linked to Kraken account #AA76 N84G K4FV QRWA. The Kraken records show VAN DER HULST withdrew approximately 439,973 Euros from this Kraken account to the two linked bank accounts after exchanging the crypto currency to Euros. Case agents know that Bitcoins were transferred from private wallet #2, used by BUYETIZOLAM to receive drug payments, to Kraken account #AA76 N84G K4FV QRWA and these funds were then converted into 439,973 Euros in the linked bank accounts. As a result, case agents believe these funds are drug proceeds.

61.     The Kraken records showed a current balance as of November 20, 2021 of an extensive variety of fiat currency (U.S. dollar and Euro) and cryptocurrency coins valued at approximately $155,065.68. The assets located on deposit in Kraken account #AA76 N84G K4FV QRWA, held in the name of KEVIN VAN DER HULST  (DOB: XX/XX/1988) with an associated email address of kevinvanderhulst@gmail.com are as follows:

- $13,396.43 U.S. Dollar,
- 503.52 Euro,
- 0.0035874200 Bitcoin,
- 20.0 Litecoin,
- 100.0 Ethereum Classic,
- 30.00000004 Zcash,
- 19.986 Monero,
- 1,000.0 EOS,
- 4.23045177 Bitcoin Cash,
- 313.66806525 Nano,
- 30,000.0 Siacoin,
- 1,831.52889494 ICON,
- 5,000.0 Basic Attention Token,
- 300.0 Chainlink,
- 4,435.15201774 Algorand,

31

- 634.33481132 Polkadot,
- 49.94 Filecoin,
- 422.0 Flow,
- 349.82 Uniswap,
- 6,282.5362287 Polygon,
- 499.51999999 Mina,
- 60.0 Solana,
- 500.0 1inch,
- 700.0 dYdX,
- 1,226.055455 Tezos,
- 5,044.345859 Cardano, and
- other lesser valued crypto-currency

62. For all the reasons stated, based on their training and experience, and the investigation to date, case agents believe these funds located in Kraken account #AA76 N84G K4FV QRWA owned by VAN DER HULST, are drug proceeds, and this account is being used to launder illicit proceeds. Furthermore, case agents know that the various types of crypto currency contained in this Kraken account are frequently exchanged for other types of crypto currency, and these values are constantly fluctuating.

63. Case agents traced funds leaving private wallet #2. Funds were traced to 5 different Binance accounts, and the records for these Binance accounts were received pursuant to a DEA Administrative subpoena. The account email addresses for these five **Binance** accounts are as follows:

- Account 1: Email: **tigerliontrader@protonmail.com**

- Account 2: Email: antelephanttrader@protonmail.com

- Account 3: Email: laharagencies@gmail.com

- Account 4: Email: sales@mybestpill.com

- Account 5: Email: roseflower2021@protonmail.com.

64. Account 1 email address **tigerliontrader@protonmail.com** is the same email address for a KuCoin account containing crypto currency worth approximately $104,255.60 of drug proceeds. Case agents know the same person controls both accounts since they are both registered to the same email address. In regard to Account 3 email address laharagencies@gmail.com, case agents know that Lahar

Agencies is a pharmaceutical drug shipper located in India.  This shipper supplies controlled and non-controlled prescription drugs.  Case agents reviewed emails from the pmagencysales@gmail.com account and observed an incoming email on July 2, 2018.  This email was sent to a total of 11 email addresses, to include orderslaharagencies@gmail.com and pmagencysales@gmail.com, and asked for information on "controlled medicine" for sale.  In regard to account four email address sales@mybestpill.com, case agents believe, based on training and experience, this email address is used as a customer service email address by an online pharmacy.  Based on all the foregoing, and based on their training and experience, and the investigation to date, case agents believe funds transferred from private wallet #2 to these five Binance accounts are drug proceeds and/or funds used to purchase pharmaceuticals.

65.	Case agents identified a select eight Bitcoin transactions which sent funds from multiple Coinbase accounts to Bitcoin addresses contained within private wallet #2.  These eight transactions were conducted by six Coinbase accounts.  The Coinbase account holder details are as follows:

### Account 1

- User ID: 5a63a7c21a134f066c830a68

- Name: Aaron SOARES

- DOB: June 12, 1990

- Address: 6685 Struthers Road, Youngstown, Ohio 44514

- Email: aaron.soares@ymail.com

### Account 2

- User ID: 5a540cdc9332eb041a873ebb

- Name: Harry Alan BROADBENT

- DOB: October 5, 1990

- Address: 29 Highland Dr., Terranora, New South Wales, 2486 Australia

- Email: harryabroadbent@gmail.com

33

## Account 3

- User ID: 5a569feaa27718048516548b

- Name: Steven RUPERT

- DOB: December 13, 1960

- Address: 700 NE Alice's Road, #10, Waukee, Iowa 50263

- Email: stevensarchery@gmail.com

## Account 4

- User ID: 5bf56033be1356018308c0ba

- Name: James ROBERTSON

- DOB: May 21, 1960

- Address: 3938 East Barton Creek Drive, Eagle Mountain, Utah, 84005

- Email: jimholly100@gmail.com

## Account 5

- User ID: 5d0a687fc0819c009645b7ed

- Name: Tran WOODS

- DOB: August 15, 1979

- Address: 4151 W. North Gate Drive, Apt. 1703, Irving, Texas 75062

- Email: tranzillamedia@gmail.com

## Account 6

- User ID: 601286c7768fb801b2b99b07

- Name: Akshay SAKODE

- DOB: September 19, 1994

- Address: 72 Dakshinamurti Galli, Nagpur, 440032 India

- Email: pmagencysales@gmail.com

66.     Case agents know that these 8 Bitcoin payments made to private wallet #2 are consistent with drug payments made by BUYETIZOLAM customers.  In addition, Coinbase account holder AKSHAY SAKODE (account #6) is the owner of PREMIER MEDICAL AGENCY which supplied the drugs to BUYETIZOLAM.  Case agents reviewed AKSHAY SAKODE's email content for email account pmagencysales@gmail.com.  Case agents observed multiple emails to AKSHAY SAKODE from account #1 (aaron.soares@ymail.com), account #2 (harryabroadbent@gmail.com), account #3 (Steven Rupert), account #4 (jimholly100@gmail.com), and account #5 (tranzillamedia@gmail.com) inquiring about purchasing medications.  Emails indicate that account holder #2, account holder #3, and account holder #4 sent payments for these medications, via Bitcoin.  All of these facts further support that private wallet #2 received these Bitcoin drug payments, and is therefore being used to receive and transfer drug proceeds.

67.     Case agents further traced the Bitcoin drug payment made by Coinbase account #1 (aaron.soares@ymail.com) after it was transferred out of private wallet #2.  These funds were traced through private wallet #2, directly to Kraken account #AA76 N84G K4FV QRWA, held in the name of KEVIN VAN DER HULST.

68.     Case agents spoke with SOI-1 and reviewed records seized from SOI-1 during the execution of the federal search warrant in August 2020.  SOI-1 owed LETTINGA and VAN DER HULST funds for processing BUYETIZOLAM customers' drug payments through the website.  SOI-1 was directed by LETTINGA to transfer $6,865 in drug payments in the form of Bitcoin to Bitcoin address 13LC1gtP6V2cvhZ2E9RaYPzRpL5SD6xcs6 which SOI-1 said he had SOI-2 send on his behalf, on approximately August 21, 2020.

69.     Case agents traced this payment sent by SOI-2, as directed by SOI-1, which originated in private wallet #2. These drug proceeds were sent to another private wallet consisting of 184 Bitcoin addresses, hereinafter referred to as "private wallet #3."  Private wallet #3 has received and then resent 3.6 BTC (approximately $36,000 USD at the time) between September 1, 2017 and January 21, 2021.

This payment sent by SOI-2 was initiated on August 18, 2020 for a total of 0.5656 BTC (current approximate value of $24,207.68 USD). Some of these funds were then transferred to Wirex Bitcoin addresses while the majority was traced through another wallet before being deposited in Kraken account #AA76 N84G K4FV QRWA, held in the name of KEVIN VAN DER HULST (DOB: XX/XX/1988) with an associated email address of kevinvanderhulst@gmail.com. Case agents were able to trace additional funds transferred out of private wallet #3 (wallet which received and sent SOI-2's payment) to Binance, BitPay, ZebPay, and Wirex platforms in the following amounts:

| Receiving Entity | # of Trxs | Total BTC Sent | USD Value |
|---|---|---|---|
| WirexApp.com | 22 | 0.80751888 | $8,041.97 |
| BitPay.com | 15 | 0.8311641 | $8,012.49 |
| Binance.com | 17 | 0.49803327 | $3,665.56 |
| Zebpay.com | 12 | 0.14142312 | $1,350.54 |
| **Grand Total** | **66** | **2.27813937** | **$21,070.57** |

70. Case agents received records from Wirex, pursuant to a DEA administrative subpoena, and these records identified 4 Wirex accounts which received drug proceeds sent by SOI-2, through private wallet #3. The account holder details are as follows:

<u>**Account 1**</u>

- Account Identification Number: abenc.a@gmail.com

- Account Holder Name: PIERRE DAVID LETTINGA

- Account Holder Address: 2, 2, 25, Calle Repetidor, Alicante, Altea, 03590, Comunidad Valenciana, Spain

- Date of Birth: 1 June 1970

- Telephone Number: +34 691962857

<u>**Account 2**</u>

- Account Identification Number: ben@rocstardesign.co.uk

36

- Account Holder Name: BENJAMIN HUNTER (believed to be "Ben", the third co-owner of BUYETIZOLAM)

- Account Holder Address: Local 26, No 59, 6, Carretera del Albir, Alicante, l'Alfàs del Pi, 03581, Comunidad Valenciana, Spain

- Date of Birth: 10 November 1984

- Telephone Number: +34 678277222

## Account 3

- Account Identification Number: pepebarato1@gmail.com  (email address identified by SOI-1 as belonging to a co-owner of COMPRATAPENTADOL)

- Account Holder Name: DANIEL MEUWESE

- Account Holder Address: 13, Carrer la Capitana, Alicante, l'Alfàs del Pi, 03580, Comunidad Valenciana, Spain

- Date of Birth: 31 May 1969

- Telephone Number: +34 647698696

## Account 4

- Account Identification Number: misskiki3@gmail.com

- Account Holder Name: KIRSTEN SCHUIJT MEUWESE

- Account Holder Address: 192 Buzón, 13, Carrer la Capitana, Alicante, l'Alfàs del Pi, 03580, Comunidad Valenciana, Spain

- Date of Birth: 13 March 1974

- Telephone Number: +34 646146023

71. In regards to the Wirex account holders, case agents know that LETTINGA is a co-owner of BUYETIZOLAM.  SOI-1 identified the third unidentified BUYETIZOLAM co-owner as "Ben".  Case agents believe that "Ben" is the Wirex account holder BENJAMIN HUNTER.  SOI-1 also identified that

37

a co-owner of COMPRATAPENTADOL uses email address pepebarato1@gmail.com. This is the email address for another of the Wirex accounts listing to DANIEL MEUWESE. Case agents believe that all of these accounts were used to receive and launder illicit proceeds.

72. Case agents received records from BitPay, pursuant to a DEA administrative subpoena. BitPay is a service for clients to process payments, normally through a website. BitPay does not hold the funds in an account, but instead simply processes the payment which is transferred to another account held by the client. These records identified a total of 15 transactions which were sent in 2017 and 2018 from private wallet #3 to BitPay for a total of 0.8311641 BTC (approximately $8,012.49 at the time). 14 of the 15 transactions were linked to LETTINGA. The BitPay account details are as follows:

### Account 1

- Name: Dave
- Address: laguna 1-1 torrevieja ALICANTE (located in Spain)
- Email: info@modafinilresearch.com (modafinil is a schedule IV controlled substance)
- IP address: 31.14.207.150 (Spain)

### Account 2

- Email: abenc.a@gmail.com (email address used by PIERRE DAVID LETTINGA)
- IP address: 31.14.207.150 (Spain)

73. Case agents believe all of the funds processed by BitPay are drug proceeds because they originated in private wallet #3, which is known to receive and send drug proceeds, and the BitPay payments were processed on behalf of two accounts listing to LETTINGA. Furthermore, LETTINGA was using the email address info@modafinilresearch.com for one of these accounts. Case agents know that modafinil is a schedule IV controlled substance and is sold by BUYETIZOLAM.

74. Case agents received records from ZebPay, pursuant to a DEA administrative subpoena, and these records identified 1 ZebPay account which received suspected drug proceeds from private wallet

#3. A total of 12 transactions were sent from private wallet #3 to ZebPay Bitcoin address 3HRYjxfNfczNatiksaT1YnAyX49o67XeoC for a total of 0.14142312 BTC (approximately $1,350.54 USD at the time). The account holder details are as follows:

| Name | AKSHAY SAKODE |
|---|---|
| Phone Number | 91 7304096699 |
| Email Id | akshaysakode@gmail.com |

| Account registration details | |
|---|---|
| Date of Download Zebpay App | 12/5/2017 |
| Date Of Birth | 19/09/1984 |
| Address Details | daxinamurti chowk,mahal S.o, nagpur, Maharashtra, 440032 |

| Bank Account details of AKSHAY SAKODE | |
|---|---|
| Beneficiary Name | AKSHAY SAKODE |
| Bank Name | ICICI BANK LIMITED |
| Account Number | 2001614168 |

75. Case agents believe all of the funds transferred to this ZebPay account are drug proceeds because they originated in private wallet #3, and the ZebPay account belongs to the Indian drug supplier AKSHAY SAKODE (PREMIER MEDICAL AGENCY). All records and statements revealed the only relationship between BUYETIZOLAM and AKSHAY SAKODE is that AKSHAY SAKODE is the drug supplier. As a result, case agents believe these funds were payment for drug sales.

76. Case agents received records from **Binance**, pursuant to a DEA administrative subpoena, and these records identified two **Binance** accounts which received suspected drug proceeds from private wallet #3. A total of 17 transactions were sent from this private wallet #3 to the two Binance accounts for a total of 0.49803327 BTC (approximately $3,665.57 USD at the time). The account holder details are as follows:

39

**Account 1**

- Account Holder Name: PIERRE DAVID LETTINGA

- Account User ID: 11961107

- Email: abenc.a@gmail.com

- Date of Birth: June 1, 1970

- Telephone Number: +34-691962857

**Account 2**

- Account Holder Name: MUHAMMAD MUBASHIR ALI

- Account User ID: 15650071

- Email: m.mubashir4321@gmail.com

- Date of Birth: March 12, 1993

- Telephone Number: +92-3014020052

77.     Case agents noted the account balance in Binance account belonging to MUHAMMAD MUBASHIR ALI is minimal.  Case agents reviewed the account balance for Binance account user ID #11961107, held in the name of PIERRE DAVID LETTINGA  (DOB: XX/XX/1970) with an associated email address of abenc.a@gmail.com. The account balance is as follows:

- 1702241015.41 SHIBA INU

- 993.645589 TetherUS

78.     The approximate combined total value of the 1702241015.41 SHIBA INU and 993.645589 TetherUS is $58,401.08 USD.  The Binance account also holds very minimal balance of additional crypto currencies, but the account is being used regularly to exchange (buy and sell) crypto currencies.  As a result, the balance of each crypto currency type can fluctuate.

79.     Case agents believe all of the funds transferred to this Binance account are drug proceeds because 16 transactions originated in private wallet #3.  These 16 transactions consist of 0.49733327 BTC

40

valued at approximately $3,654.18 USD at the time (approximately $21,285.86 USD at the present time.) Furthermore, this Binance account belongs to BUYETIZOLAM co-owner LETTINGA. As a result, case agents request to seize funds in Binance Account User ID #11961107, held in the name of PIERRE DAVID LETTINGA (DOB: XX/XX/1970) with an associated email address of abenc.a@gmail.com.

80. Case agents reviewed VAN DER HULSTS's email account kevinvanderhulst@gmail.com and observed the following:

- There was an incoming email on November 26, 2020 from BTCPay confirming a payment to VAN DER HULST. BTCPay is the payment processing service used by BUYETIZOLAM to accept drug payments. This is the payment processing service used to process the undercover's drug payment.

- There was an email confirming a Bitcoin payment was received for the website COMPRATAPENTADOL.

81. Case agents reviewed LETTINGA's email account tinuschicken@gmail.com and observed the following:

- There was email communication with a BUYETIZOLAM customer on December 11, 2020 directing the customer to send payment to BTC address 1JcXbqtYJ7GNXHZAnJfgwFfLDJmw7w4G4K. Case agents found that on May 23, 2021, 0.05417605 BTC (approximately $1,831.39 at the time) was sent from this same BTC address which is used to receive drug payments, to Kraken account #AA76 N84G K4FV QRWA, held in the name of KEVIN VAN DER HULST.

- There was email communication with a BUYETIZOLAM customer on February 21, 2021 directing the customer to send payment of $115 to BTC address 345te9a7kQhamBtzy6Eo61PEbPUF9ooBTC. This BTC address is part of a wallet consisting of 621 BTC addresses. Between December 25, 2020 and April 3, 2021, a total

41

of 631 deposits consisting of 2.79752167 BTC (approximately $119,733.93 USD) from this wallet were consolidated and transferred in one outgoing transfer to another wallet. Between May 8, 2021 and May 22, 2021, this other wallet transferred a portion of the funds (0.47046142 BTC which is approximately $20,135.75 USD) directly to Kraken account #AA76 N84G K4FV QRWA, held in the name of KEVIN VAN DER HULST. This wallet transferred another 1.2 BTC (approximately $50,400 USD) to a cold storage wallet. Case agents know a cold storage wallet is maintained on a personal device such as a laptop or thumb drive and is used for its increased security.

- Multiple additional emails showing customers were directed to make payments to BUYETIZOLAM, via Bitcoin, through BTCPay. This is the same service BUYETIZOLAM used to process the undercover's Bitcoin drug payment.

82. Case agents identified total amount of funds transferred from private wallet #2 and private wallet #3 to the accounts case agents are seeking to seize funds from. Case agents have shown private wallet #2 and private wallet #3 are being used to transfer drug proceeds and further the criminal organization, and as a result, case agents believe the funds transferred from these wallets to the accounts in the following chart are laundered drug proceeds:

| Sending Wallet | BTC Amount | USD Equivalent | # of Trxs | Earliest Trx Date | Most Recent Trx Date |
|---|---|---|---|---|---|
| Kraken account #AA76 N84G K4FV QRWA, held in the name of KEVIN VAN DER HULST | | | | | |
| Private Wallet 2 | 10.71395125 | $256,712.60 | 31 | 9/14/2020 | 8/31/2021 |
| Private Wallet 3 | 0 | 0 | 0 | | |
| Binance Account User ID #11961107, held in the name of PIERRE DAVID LETTINGA | | | | | |
| Private Wallet 2 | 0 | 0 | 0 | | |
| Private Wallet 3 | 0.49733327 | $3,654.18 | 16 | 12/6/2017 | 6/17/2020 |
| Wirex - LETTINGA | | | | | |
| Private Wallet 2 | 0 | 0 | 0 | | |
| Private Wallet 3 | 0.44510888 | $4,010.64 | 12 | 12/4/2017 | 9/3/2020 |
| KuCoin account primary ID # 73008568, associated email address of onlineshipping24x7@protonmail.com | | | | | |
| Private Wallet 2 | 0.02271715 | $1,306.21 | 1 | 10/12/2021 | 10/12/2021 |

| Private Wallet 3 | 0 | 0 | 0 | | |
|---|---|---|---|---|---|
| KuCoin account primary ID #67429710, associated email address of alexgodmanbe@gmail.com | | | | | |
| Private Wallet 2 | 0.11203657 | $5,471.87 | 1 | 9/2/2021 | 9/2/2021 |
| Private Wallet 3 | 0 | 0 | 0 | | |
| KuCoin account primary ID # 67435253, associated email address of **tigerliontrader@protonmail.com** | | | | | |
| Private Wallet 2 | 1.16065665 | $64,549.49 | 4 | 10/4/2021 | 11/16/2021 |
| Private Wallet 3 | 0 | 0 | 0 | | |
| **Binance Account User ID #66549745, held in the name of NIKHIL SURESH MATHRE with an associated email address of tigerliontrader@protonmail.com** | | | | | |
| Private Wallet 2 | 1.53051661 | $70,061.11 | 2 | 3/8/2021 | 8/5/2021 |
| Private Wallet 3 | 0 | 0 | 0 | | |
| **Total BTC Sent to Above Accounts:** | **14.48232038** | | | | |
| **Total USD Equivalent Sent to Above Accounts:** | **$405,766.10** | | | | |

83.     Case agents identified an additional private wallet consisting of 11 Bitcoin addresses, hereinafter referred to as "private wallet #4."  Private wallet #4 also transferred funds to several of the accounts subject to forfeiture.  Private wallet #4 received 0.68367813 Bitcoin and transferred 0.59968584 BTC (approximately $25,666.55 USD) between December 8, 2020 and January 10, 2022.  The current balance of private wallet #4 is 0.08242007 Bitcoin ($3,527.58 USD).  Some of the funds were transferred from private wallet #4 to the following accounts, which case agents believe contain drug proceeds and are subject to forfeiture:

- Kraken account #AA76 N84G K4FV QRWA, held in the name of KEVIN VAN DER HULST (DOB: XX/XX/1988) with an associated email address of kevinvanderhulst@gmail.com

    o   1 transaction on May 1, 2021 of 0.08674737 BTC (approximately $5,070.24 USD at the time)

- KuCoin account primary ID # 67435253, Sub Account ID # 67435253, associated email address of **tigerliontrader@protonmail.com**

    o   1 transaction on October 12, 2021 of 0.0272981 BTC (approximately $1,573.13 USD at the time)

43

- KuCoin account primary ID # 73008568, Sub Account ID # 73008568, associated email address of onlineshipping24x7@protonmail.com
  - 1 transaction on October 8, 2021 of 0.00350306 BTC (approximately $195.90 USD at the time)
- KuCoin account primary ID #67429710, Sub Account ID #67429710, associated email address of alexgodmanbe@gmail.com
  - 1 transaction on September 2, 2021 of 0.05981658 BTC (approximately $3,011.37 USD at the time)
- **Binance Account associated email address of tigerliontrader@protonmail.com**
  - 1 transaction on August 5, 2021 of 0.23151137 BTC (approximately $9,571.13 USD at the time)

84. Case agents identified one Coinbase account which transferred funds three times to private wallet #4. The Coinbase account holder is as follows:

### Coinbase Account

- User ID: 5e865f7bb9369b12408d6977
- Name: Trent Walter BRODYK
- DOB: August 8, 1978
- Address: 60341 rr 165, Smoky Lake, Alberta T0A 3C0, Canada
- Email: hawk.masters.interiors@gmail.com

85. Case agents know that these three Bitcoin payments made to private wallet #4 are consistent with drug payments made by BUYETIZOLAM customers. Case agents reviewed AKSHAY SAKODE's email content for email account pmagencysales@gmail.com. Case agents observed multiple emails to AKSHAY SAKODE from the Coinbase account holder (hawk.masters.interiors@gmail.com) inquiring about purchasing medications. Emails indicate that this Coinbase account holder then sent

44

payments for these medications, via Bitcoin. All of these facts further support that private wallet #4 is being used to receive and transfer drug proceeds to the various accounts subject to forfeiture.

86. These drug payments made by this Coinbase account holder (hawk.masters.interiors@gmail.com) were transferred to private wallet #4 and then to private wallet #2. From private wallet #2, the drug payments were sent to the following accounts which are subject to forfeiture:

- Two drug payments transferred to KuCoin account primary ID #67435253, Sub Account ID # 67435253, associated email address of **tigerliontrader@protonmail.com**

- One drug payment transferred to KuCoin account primary ID #67429710, Sub Account ID #67429710, associated email address of alexgodmanbe@gmail.com.

87. On January 26, 2022, case agents served Binance a letter requesting they freeze the withdrawal of funds from Binance Account User ID #11961107, held in the name of PIERRE DAVID LETTINGA (DOB: XX/XX/1970) with an associated email address of abenc.a@gmail.com. Binance provided the account balance of this account on February 4, 2022 and an updated balance again on February 21, 2022. This account has maintained its balance of approximately 1,500,821,780.93 Shiba Inu worth approximately $46,525.48 USD. This Binance account also holds additional crypto-currencies with minimal balances. Since the account holder is still able to transfer the Shiba Inu into other crypto-currencies within the same account, case agents request the seizure of all funds contained within this account.

88. On January 26, 2022, case agents served KuCoin a letter requesting they freeze the withdrawal of funds from KuCoin account primary ID # 67435253, Sub Account ID # 67435253, associated email address of **tigerliontrader@protonmail.com**. KuCoin provided the account balance of this account on February 21, 2022. Nearly all the funds had been transferred out of this account prior to the account being frozen, and case agents have been able to trace a substantial amount of the funds directly

45

to **Binance Account User ID #66549745, held in the name of NIKHIL SURESH MATHRE (DOB: XX/XX/2000) with an associated email address of tigerliontrader@protonmail.com.**

89.     Case agents traced the following funds (approximately $50,510.12 USD) directly from the KuCoin **tigerliontrader@protonmail.com,** account which received the undercover drug payment, to **Binance Account User ID #66549745, held in the name of NIKHIL SURESH MATHRE (DOB: XX/XX/2000) with an associated email address of tigerliontrader@protonmail.com.**

| Exchange | Customer Name | Date | Virtual Currency Amount | USD Value | Currency |
|----------|---------------|------|------------------------|-----------|----------|
| KuCoin | tigerliontrader@protonmail.com | 12/3/2021 | 50000 | $50,010.00 | USDT |
| KuCoin | tigerliontrader@protonmail.com | 1/11/2022 | 500 | $500.12 | USDT |

90.     On February 11, 2022, case agents served KuCoin a letter requesting they freeze the withdrawal of funds from KuCoin account primary ID #67429710, Sub Account ID #67429710, associated email address of alexgodmanbe@gmail.com.  KuCoin provided the account balance of this account on February 21, 2022.  This account contains approximately 37,406.0289 Dogecoin worth approximately $5,537.22USD and approximately 48685.946420226789 Tether worth approximately $48,685.94 USD.  This Kucoin account also hold and additional crypto-currency with a minimal balance.  Since the account holder is still able to transfer the the Dogecoin and Tether into other crypto-currencies within the same account, case agents request the seizure of all funds contained within this account.

91.     On February 21, 2022, case agents received updated account balance from KuCoin in regards to KuCoin account primary ID #73008568, Sub Account ID #73008568 associated email address of onlineshipping24x7@protonmail.com.  This account contains approximately 250 The Sandlot worth approximately $1,023.48 USD, approximately 20,000 Crypto.com Coin worth approximately $9,611.45 USD, approximately 52138.8198993181541852 Tether worth approximately $52,138.81 USD, approximately 2423.1011 Chiliz worth approximately $514.57 USD, and approximately 11 Avalanche worth approximately $929.10 USD.  This Kucoin account also holds additional crypto-currencies with

46

minimal balances.

92. On March 15, 2022, case agents received one final updated balance from KuCoin in regards to KuCoin account primary ID #67429710, Sub Account ID #67429710, associated email address of alexgodmanbe@gmail.com. No transactions have occurred since the account was frozen, and as a result the balance is still approximately 37,406.0289 Dogecoin worth approximately $5,537.22USD and approximately 48685.946420226789 Tether worth approximately $48,685.94 USD.

93. Sophisticated drug traffickers and money launderers prefer to use private crypto-currency wallets, which are controlled and stored on personal devices such as a laptop computer, cellular telephone, or thumb drive. This is preferred for the security of these funds since the funds are physically stored in the device (private wallet). Eventually, the funds need to reach a crypto-currency exchange which is similar to a "bank for crypto-currency." This is required by the drug trafficker/money launderer because the crypto-currency exchange is linked to a bank account, and this is how the funds are commonly exchanged from crypto-currency to fiat currency. Although crypto-currency can often be traced by law enforcement through private wallets and crypto-currency exchanges, law enforcement cannot locate or seize a private wallet stored on a personal device, unless that personal device is in the physical possession of law enforcement. As a result, criminal proceeds in the form of crypto-currency are regularly transferred between private wallets and crypto-currency exchanges to disguise the funds, and it is often times as the funds funnel through the crypto-currency exchange, such as Kraken, Binance, and KuCoin (Subject Accounts), that law enforcement can seize the funds with the cooperation of the crypto-currency exchange "bank for cryptocurrency."

94. Case agents traced multiple Bitcoin transactions made by the undercover agent, the SOI-2 on behalf of SOI-1, and numerous customers purchasing controlled and non-controlled drugs requiring a prescription. These drug payments and funds derived from processing drug payments were transferred through private wallets #1, #2, #3, and #4. Many of these payments were sent from accounts belonging

47

to suspected drug customers throughout the United States. In addition, funds were also sent by the owner of PREMIER MEDICAL AGENCY, AKSHAY SAKODE. From these private wallets, funds were sent to multiple accounts to include the following accounts which case agents are believe are subject to forfeiture:

- Kraken account #AA76 N84G K4FV QRWA, held in the name of KEVIN VAN DER HULST (DOB: XX/XX/1988) with an associated email address of kevinvanderhulst@gmail.com

- KuCoin account primary ID # 67435253, Sub Account ID # 67435253, associated email address of **tigerliontrader@protonmail.com**

- KuCoin account primary ID #67429710, Sub Account ID #67429710, associated email address of alexgodmanbe@gmail.com

- KuCoin account primary ID # 73008568, Sub Account ID # 73008568, associated email address of onlineshipping24x7@protonmail.com

- Binance Account User ID #11961107, held in the name of PIERRE DAVID LETTINGA (DOB: XX/XX/1970) with an associated email address of abenc.a@gmail.com

- **Binance Account User ID #66549745, held in the name of NIKHIL SURESH MATHRE (DOB: XX/XX/2000) with an associated email address of tigerliontrader@protonmail.com.**

95. Case agents attempted to identify additional source of funds for **Binance Account User ID #66549745, held in the name of NIKHIL SURESH MATHRE (DOB: XX/XX/2000) with an associated email address of tigerliontrader@protonmail.com.** Case agents conducted further analysis of this Binance account and identified an additional private wallet. This private wallet has sent the following funds to the subject account and other accounts used by the DTO.

| Source Address / Account 1QK3i2H2uXrcLWTSRCCptQxiqzYjFRBssq | # of Transactions | Total VC Amount | Sum of USD Value | Earliest TX Date | Latest TX Date |
|---|---|---|---|---|---|
| Tigerliontrader (Binance) | 4 | 3.55728899 | $170,902.54 | 2/9/2021 | 8/23/2021 |
| tigerliontrader@protonmail.com (KuCoin) | 2 | 0.54639382 | $33,785.05 | 11/3/2021 | 11/23/2021 |
| onlineshipping24x7@protonmail.com | 1 | 0.05054837 | $3,023.43 | 10/15/2021 | 10/15/2021 |

96.     Based on their training and experience, and the investigation to date, case agents believe the four transactions totaling $170,902.54 USD sent from this private wallet (1QK3i2H2uXrcLWTSRCCptQxiqzYjFRBssq) to the **Binance account (Subject Account)** are drug proceeds because this private wallet also sent funds to two KuCoin accounts known to receive drug proceeds.  Furthermore, one of these KuCoin accounts (**tigerliontrader@protonmail.com**) is believed to belong to the same account holder as the **Binance Subject Account** because they are both registered to the same email address.

97.     On February 7, 2022, U.S. Magistrate Judge Nancy Joseph issued a seizure warrant for Kraken account #AA76 N84G K4FV QRWA because there was probable cause to believe that it is proceeds of a conspiracy to distribute, manufacture, dispense, or possess with the intent to manufacture, distribute, or dispense a controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846; distribution of a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1); conspiracy to  deliver, distribute, or dispense a controlled substance by means of the Internet, in violation of Title 21, United States Code, Sections 841(h), 843(c)(2)(A), and 846; and distribution of a controlled substance by means of the Internet, in violation of Title 21, United States Code, Section 843(c)(2)(A).

98.     On March 29, 2022, U.S. Magistrate Judge William Duffin issued a seizure warrant for Binance Account User ID #11961107 because there was probable cause to believe that it is proceeds of a conspiracy to distribute, manufacture, dispense, or possess with the intent to manufacture, distribute, or dispense a controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846;

49

distribution of a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1); conspiracy to deliver, distribute, or dispense a controlled substance by means of the Internet, in violation of Title 21, United States Code, Sections 841(h), 843(c)(2)(A), and 846; and distribution of a controlled substance by means of the Internet, in violation of Title 21, United States Code, Section 843(c)(2)(A).

99.     On March 29, 2022, U.S. Magistrate Judge William Duffin issued a seizure warrant for KuCoin account primary ID #67429710 because there was probable cause to believe that it is proceeds of a conspiracy to distribute, manufacture, dispense, or possess with the intent to manufacture, distribute, or dispense a controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846; distribution of a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1); conspiracy to deliver, distribute, or dispense a controlled substance by means of the Internet, in violation of Title 21, United States Code, Sections 841(h), 843(c)(2)(A), and 846; and distribution of a controlled substance by means of the Internet, in violation of Title 21, United States Code, Section 843(c)(2)(A).

100.     On March 8, 2022, case agents served Binance a letter requesting they freeze the withdrawal of funds from **Binance Account User ID #66549745, held in the name of NIKHIL SURESH MATHRE (DOB: XX/XX/2000) with an associated email address of tigerliontrader@protonmail.com**.  Binance provided the account balance of this account on April 11, 2022.  This account contains approximately **55618.76475003 TetherUS (USDT),** worth approximately $55,618.76 USD.  This Binance account also holds additional crypto-currency with a minimal balance. Since the account holder is still able to transfer the TetherUS (USDT) into other crypto-currencies within the same account, case agents request the seizure of all funds contained within this account.

101.     Case agents have reviewed the incoming and outgoing transactions from **Binance Account User ID #66549745, held in the name of NIKHIL SURESH MATHRE (DOB: XX/XX/2000) with an associated email address of tigerliontrader@protonmail.com** between January 16, 2021 and April 4, 2022.  This account has received large deposits of crypto-currency totaling approximately $2,896,861.52

50

USD, and shortly thereafter, transferred the funds out to other accounts. These other accounts receiving funds from the Subject Account have received and transferred tens of millions of dollars worth of crypto-currency. The Subject account is primarily receiving funds with the balances being whole numbers up to $100,000 USD per transaction. Case agents know that these amounts, and the connection to the additional accounts transferring tens of millions of dollars worth of crypto-currency is consistent with laundering illicit proceeds.

102. Case agents have shown well in excess of $1 million in drug proceeds derived by the sale of drugs by BUYETIZOLAM and PREMIER MEDICAL AGENCY working together. Case agents have specifically shown much more crypto-currency has transferred through the subject accounts than is the current balance. In addition, the funds being transferred through the subjects account(s) are not merely believed to be drug proceeds, but also that the funds are being used to further the drug trafficking organization by paying expenses such as the purchasing of the drugs from the drug supplier(s). Case agents know that the value of Bitcoin is constantly fluctuating, and unlike traditional stocks, crypto-currency values continue to fluctuate 24 hours a day. The user(s) of the Subject Account(s) then exchange received crypto-currency from one currency to another. For these reasons, and for the fact that drug proceeds are co-mingled, being exchanged with other crypto-currency, and this account is being used to further the drug trafficking organization, case agents request a warrant to seize approximately **55618.76475003 TetherUS (USDT), and any other crypto-currency on deposit in Binance Account User ID #66549745, held in the name of NIKHIL SURESH MATHRE (DOB: XX/XX/2000) with an associated email address of tigerliontrader@protonmail.com.**

103. Case agents believe that SOI-1 is a reliable witness as SOI-1 has provided a statement against SOI-1's own penal interest, and information provided by SOI-1 has been independently corroborated by case agents. SOI-1's criminal history consists of misdemeanor assault and misdemeanor menacing. SOI-1 has no prior felony convictions. SOI-1 has provided information in other investigations,

51

and that information was found to be accurate and reliable.  SOI-1 is cooperating with law enforcement for potential consideration for his federal felony drug distribution arrest, which remains pending.

104.    Case agents believe that SOI-2 is a reliable witness as SOI-2 has provided a statement against SOI-2's own penal interest, and information provided by SOI-2 has been independently corroborated by case agents. SOI-2's criminal history consists of one prior federal felony conviction for conspiracy to commit health care fraud, mail and wire fraud, money laundering, and illegal monetary transaction, conspiracy to distribute controlled substances, and mail fraud. SOI-2 may have been arrested for forgery in the 1980s. SOI-2 has provided information in other investigations, and that information was found to be accurate and reliable.  SOI-2 is cooperating with law enforcement for potential consideration in his new federal felony drug conspiracy and drug distribution case, and any revocation sentence for his supervised release in the prior case.

105.    PETTIT is a reliable witness as PETTIT has provided a statement against his own penal interest, and information provided by PETTIT has been independently corroborated by case agents. PETTIT's criminal history convictions consists of possession of drug paraphernalia, three counts of possession of a controlled substance (felony), receiving stolen property, receiving stolen vehicle, and forgery. PETTIT's federal charges of felon in possession of a firearm and ammunition in the District of New Mexico is ongoing.  PETTIT is cooperating with law enforcement for potential consideration for his federal felony drug distribution arrest, which remains pending.

106.    As of February 21, 2022, **Binance Account User ID #66549745, which contains 55618.76475003 TetherUS (USDT), and any other crypto-currency on deposit in Binance Account User ID #66549745, held in the name of NIKHIL SURESH MATHRE (DOB: XX/XX/2000) with an associated email address of tigerliontrader@protonmail.com**, is valued at approximately $55,618.76 USD.

## CONCLUSION

107.    Based on the facts and circumstances set forth in this affidavit, I submit that there exists probable cause to believe that approximately **55618.76475003 TetherUS (USDT), and any other crypto-currency on deposit in Binance Account User ID #66549745, held in the name of NIKHIL SURESH MATHRE (DOB: XX/XX/2000) with an associated email address of tigerliontrader@protonmail.com** are:

    a.    Proceeds of a conspiracy to distribute, manufacture, dispense, or possess with the intent to manufacture, distribute, or dispense a controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846; distribution of a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1); conspiracy to deliver, distribute, or dispense a controlled substance by means of the Internet, in violation of Title 21, United States Code, Sections 841(h), 843(c)(2)(A), and 846; and distribution of a controlled substance by means of the Internet, in violation of Title 21, United States Code, Section 843(c)(2)(A);

    b.    Proceeds involved in money laundering transactions in violation of Title 18, United States Code, Section 1956(a)(1).

    c.    Subject to civil forfeiture under Title 21, United States Code, Section 881(a)(6) and Title 18, United States Code, Sections 981(a)(1)(A) and 981(a)(1)(C), and subject to criminal forfeiture under Title 21, United States Code, Section 853 and Title 18, United States Code, Section 982(a)(1); and

    d.    Subject to seizure via a civil seizure warrant under Title 18, United States Code, Section 981(b) and Title 21, United States Code, Section 881(b) and via a criminal seizure warrant under Title 21, United States Code, Section 853(f).